## THE STATE *vs.* CASSEL, alias BAKER.—June, 1828.

In an indictment founded upon the act of 1809, *ch.* 138, for stealing a bank note, it is sufficient to describe the note as a bank note for the payment of, &c. and of the value of, &c. Nothing more is required than to charge the offence in the language of the act.

Where an indictment is founded upon a single statute, and not upon any other in conjunction with it, it is clear that its conclusion must be in the singular.

But where an offence is created by one act of assembly, and the punishment prescribed or affixed by another, the better opinion is that its conclusion should be against the acts of assembly.

Bank notes are considered and treated as money, and the true rule of their value as respects the graduating the offence of stealing, is the sum which upon their face they promise to pay.

Error to *Baltimore* City Court, issued on the part of the state, for the removal of a criminal prosecution. The indictment was as follows: "State of *Maryland*, city of *Baltimore*, to wit. The jurors of the state of *Maryland* for the body of the city of *Baltimore*, do on their oaths present, that *John Cassel*, late of the said city, yeoman, otherwise called *Thomas Baker*, together with *Jacob W. Callip*, on the first day of October, in the year one thousand eight hundred and twenty-seven, with force and arms, at the city aforesaid, one bank note for the payment twenty dollars, and of the value of twenty dollars, one other bank note for the payment of," &c. "and divers other bank notes, to wit, sixteen bank notes for the payment of divers sums of money, in the whole amounting to a large sum of money, to wit, the sum of eighty dollars, and of the value of eighty dollars, of the bank notes and property of *Oran D. Crane*, then and there being found, feloniously did steal, take and carry away, contrary to the form of the act of assembly in such case made and provided, and against the peace, government and dignity of the state." The prisoner pleaded not guilty, and issue was joined. The jury found the prisoner guilty; and he moved the court in arrest of judgment, assigning the following reasons: 1. The time at which the offence is alleged to have been committed, is not sufficiently designated. 2. The bank notes ought to have been alleged to have been the notes of a bank or banks established under charter from the government of the *United States*, or some particular state. In the indictment this is not done. 3. The conclusion of the indictment should have been against the acts of assembly, and not against the act as is alleged in the indictment. 4. That the *seventh clause* of the *sixth section* of the act of 1809, *ch.* 138, is not sufficiently explicit to enable the court to pass any sentence on the prisoner, because it does not direct in what manner the value of the bank note, a *chose in action*, shall be ascertained; and unless it be ascertained, the amount of punishment cannot be determined. And neither the court nor jury, unless authorised by law, can annex a value to a *chose in action;* and, therefore, the finding the value by the jury is of no legal effect. *Baltimore* city court arrested judgment on the verdict, and discharged the prisoner; and a writ of error was brought on behalf of the state.

The cause was argued before BUCHANAN, Ch. J. and EARLE, STEPHEN, and ARCHER, J.

*Taney*, (Attorney-General,) and *Gill*, for the State, con-tended, 1. That the allegation of the day of the month, the month, and current year, is a sufficient allegation of the time laid in an indictment charging the commission of an offence.

2. The act of 1809, *ch.* 138, *s.* 6, *sub s.* 6, makes it felony to steal any bank note, and in charging such a felony in an in-dictment, it is sufficient to aver "one bank note of the value of," &c.

3. That in the conclusion of an indictment on a statutable offence, whether that offence be created or punished by one or more statute, it is sufficient to conclude against the form of the act of assembly.

4. That bank notes have now an intrinsic value, as much fixed as other articles of trade, and that, therefore, on an in-dictment charging a theft of them, the jury have the same right, and are under the same obligation to find the value thereof, as of any other stolen property.

5. That as the standard of punishment for the crime of theft depends on the value of the thing stolen, but which value does not enter into the constitution of the crime of larceny, the ju-ry, without express authority to enable the court to supply such standard, may in this, as in other cases of larceny, find the va-lue of the subject stolen.

In their argument on the several points raised, they cited the acts of assembly of 1793, *ch.* 35; 1797, *ch.* 96; 1799, *ch.* 75; and 1809, *ch.* 138, *s.* 6. 2 *Russell on Crimes,* 1147, 1148, 1149 2 *East's P. C.* 597, 598, 602. 1 *Chitty's C. L.* 238, 239, 240, 339, 340, 194, 179. *Towson vs. The Havre de Grace Bank,* 6 *Harr. & Johns.* 53. *United States vs. Good-ing,* 12 *Wheat.* 472.

No Counsel appeared for the defendant in error.

STEPHEN, J. delivered the opinion of the court. This case comes up on a writ of error directed to *Baltimore* city court; and the question presented for the adjudication of this court, arises upon the sufficiency of the matters charged in the indict-

52

ment to sustain the prosecution.   The grounds of the motion in arrest of judgment have been examined and carefully considered, and the result of our most mature deliberation, has been a conviction, that they did not warrant the judgment rendered in the court below.   This is an indictment founded upon the act of 1809, *ch.* 138, commonly called the Penitentiary Law, which provides, that larceny of any bank note or notes shall be punished in the same manner as larceny of goods and chattels.   This act speaks of a bank note or notes as the subject of larceny, without stating that they must be the notes of any particular bank or banks; and it would, therefore, seem to be reasonable, and we think the law requires nothing more in this case than to charge the offence in the language of the statute.   In this respect the act of 1809, *ch.* 138, differs from the act of 1793, *ch.* 35, which mentions the character or description of the banks by which the notes must have been issued; but upon that subject the act of 1809 is totally silent.   The prosecution being bottomed upon that act alone, and not upon any other in conjunction with it, it is clear, beyond controversy, that the conclusion is in strict conformity with the established principles of criminal pleading.   Where an offence is created by *one statute,* and the punishment is prescribed or affixed by another, we think the better opinion is, that the conclusion should be *contra formam statutorum.*   See 2 *Hale's Pleas of the Crown,* 173, where he says, if one statute be relative to another, as where the former makes the offence, and the latter adds a penalty, the indictment ought to conclude *contra formam statutorum.*   In support of which principle he refers to *Dingley vs. Moor, Croke Elizabeth,* 750.   To the same effect, see 3 *Bacon's Abr.* tit, *Indictment,* 571.   Upon the subject of the sufficiency of the description of the notes, see also 2 *Russell on Crimes,* 1149, 1150.   By an express decision of this court, in *Towson vs. The Havre de Grace Bank,* 6 *Harr & Johns.* 53, bank notes are considered and treated as money; and it would, therefore, seem to be strange that no rule or principle is held to exist, by which a jury could ascertain their value for the purpose of graduating the offence charged in the indictment. We think the true rule is to look for that purpose to the sum which upon the face of them they promise to pay.   For these

reasons, without entering further into the subject, the judgment of *Baltimore* city court is reversed.

JUDGMENT REVERSED, AND PROCEDENDO AWARDED.